PROGRESSIVE INSURANCE COMPANY, Appellant (Plaintiff Below),

v.

GENERAL MOTORS CORPORATION, Appellee (Defendant Below).

Ford Motor Company, Appellant (Defendant Below),

v.

Progressive Insurance Company, Appellee (Plaintiff Below).

General Motors Corporation, Appellant (Defendant Below),

v.

United Farm Bureau Insurance, as Subrogee of Cecil L. Marshall, and Cecil L. Marshall, Individually, Appellees (Plaintiffs Below).

Ford Motor Company, Appellant (Defendant Below),

v.

Foremost Insurance Company, Appellee (Plaintiff Below).

Progressive Insurance Company, Appellant (Plaintiff Below),

v.

Ford Motor Company, Appellee (Defendant Below).

No. 56S03-0106-CV-266.

Supreme Court of Indiana.

June 6, 2001.

Mitchell M. Pote, Michael E. Simmons, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorneys for Progressive Insurance Company.

Ronald W. Frazier, Frazier Law Office, Indianapolis, IN, Attorney for United Farm Bureau Insurance.

Marshall W. Grate, Roberts, Betz, & Bloss, P.C., Grand Rapids, MI, Attorney for Foremost Insurance Company.

Julia Blackwell Gelinas, Jeffrey J. Mortier, Kevin C. Schiferl, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Ford Motor Company.

Julia Blackwell Gelinas, Jeffrey J. Mortier, Locke Reynolds LLP, Indianapolis, IN, Attorneys for General Motors Corporation.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

Once again we are faced with a policy argument that precedent from this Court construing a statute is ill conceived. We agree that valid arguments are raised for and against recovery under the Products Liability Act for damages to a product sustained as a result of the product's own defect. However, we believe these policy considerations are for the legislature and adhere to the view that the Indiana Products Liability Act does not support such a claim.

### Factual and Procedural Background

This case involves five consolidated appeals from the grant or denial of summary judgment on the issue of whether a vehicle owner may recover under the Products Liability Act from the manufacturer for damage to the vehicle sustained when the vehicle caught fire. In each of these five cases, only the vehicle was severely damaged, allegedly due to defects in the wiring, the fuel lines, or the transmission line. The plaintiffs are insurance companies [1] who sued as subrogees to recoup the amounts they paid to their insureds as owners of the vehicles. The plaintiffs contend that these claims are cognizable under the Products Liability Act. The manufacturers, General Motors Corporation and the Ford Motor Company, assert that the owners, and therefore their subrogees, are restricted to their contractual rights under their warranties where the only damage is to the product itself.

The Court of Appeals agreed with the insurance companies' contention that the Products Liability Act was unclear on this point, and expressed the view that policy considerations favored the plaintiffs' claims under the Act. However, the Court of Appeals considered itself bound by our decisions in *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078 (Ind.1993), and *Reed v. Central Soya Co.*, 621 N.E.2d 1069 (Ind.1993), *modified on other grounds by* 644 N.E.2d 84 (Ind.1994). *Progressive Ins. Co. v. General Motors Corp.*, 730 N.E.2d 218, 221 (Ind.Ct.App. 2000). In *Rispens* and *Reed,* we concluded that there is no recovery under the Products Liability Act where the claim is based on damage to the defective product itself. Because this is a recurring subject of transfer petitions, we grant transfer to settle this issue. We reaffirm the view taken in *Reed* and *Rispens.*

### Standard of Review

On appeal, the standard of review of a summary judgment ruling is the same as that used in the trial court: sum-

---

1. Progressive Insurance Company, United Farm Bureau Insurance, and Foremost Insurance Company.

mary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 983–84 (Ind. 1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Id.; Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). We must carefully review decisions on summary judgment motions to ensure that the parties are not improperly denied their day in court. *Estate of Shebel ex rel. Shebel v. Yaskawa Elec. Am., Inc.,* 713 N.E.2d 275, 277–78 (Ind.1999).

### Damage to the Product Under the Products Liability Act

 The Products Liability Act provides, in relevant part [2]:

[A] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property *is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:*

(1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;

(2) the seller is engaged in the business of selling the product; and

(3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Ind.Code § 34–20–2–1 (1998) (emphasis added). Physical harm is defined as: "bodily injury, death, loss of services, and rights arising from any such injuries, as well as sudden, major damage to property." Ind.Code § 34–6–2–105 (1998).

 The issue is whether this section imposes liability when the "harm" caused by a "product" is damage to the product itself, and not personal injury or damage to other property. The insurance companies urge, and the Court of Appeals agreed, that the term "property" includes the "product," noting that the consumer or user presumably views the product that self-destructs as his or somebody else's property. Under this view, harm to the "user's or consumer's property" would include harm to the product itself. Although it is undoubtedly true that "products" are ordinarily somebody's "property," we think that "property" as used in the statute does not embrace the product itself. Some states have explicitly resolved this issue in their version of the products liability act. Those that have go both ways. *Compare* Conn. Gen.Stat. § 52–572m (Supp.2001) (" 'Harm' includes damage to property, including the product itself. . . ."), *with* N.J. Stat. Ann. § 2A:58C–1 (West 2000) (under products liability act, harm includes "physical damage to property, other than to the

---

**2.** The Products Liability Act was enacted in 1978. As originally enacted, the Products Liability Act covered claims in tort under the theories of negligence and strict liability. Ind.Code § 33–1–1.5–1 (1983). In 1983, it was amended to apply to strict liability actions only. Pub.L. No. 297–1983, § 1, 1983

Ind. Acts 1815. In 1995, the legislature reversed course and changed it back. Pub.L. No. 278–1995, § 1, 1995 Ind. Acts 4051. It is now codified at Title 34, Article 20 of the Indiana Code. For purposes of this opinion, we refer to the current statute.

product itself"). Indiana's statute is silent on this point, but we are not writing on a clean slate. To the contrary, this Court has consistently interpreted the Products Liability Act to bar a tort action where no damage to person or other property is present. *Reed v. Central Soya Co.*, 621 N.E.2d 1069, 1074–75 (Ind.1993), *modified on other grounds by* 644 N.E.2d 84 (Ind. 1994); *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1089 (Ind. 1993); *accord Interstate Cold Storage, Inc. v. General Motors Corp.*, 720 N.E.2d 727, 731 (Ind.Ct.App.1999).

The courts have described the problem both as injury to the product itself and as "purely economic loss." The terminology may vary but the result is the same. In *Reed*, we concluded that, where the loss is purely economic, and there is no damage to other property and no personal injury, the legislature has determined that the plaintiff's remedy lies in contract law. 621 N.E.2d at 1074–75; *accord Rispens*, 621 N.E.2d at 1089–90 (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 101, at 708 (5th ed.1984)). In *Rispens*, this Court also observed that, "If a buyer were allowed to recover economic loss under a negligence theory, he could, in effect, circumvent the seller's limitation or exclusion of warranties permitted under the Uniform Commercial Code." 621 N.E.2d at 1090–91; *accord Sanco, Inc. v. Ford Motor Co.*, 579 F.Supp. 893, 897–98 (S.D.Ind.1984) (noting that subjecting a manufacturer to tort liability for economic loss "would encroach on the decision of the legislature to enact the carefully articulated sales provisions of the Uniform Commercial Code" (citations omitted)), *aff'd*, 771 F.2d 1081 (7th Cir.1985); *Reed*, 621 N.E.2d at 1075.

■ Indiana has had occasion to elaborate on what constitutes purely economic loss to be governed by contract law. In *Reed*, 621 N.E.2d at 1074 (citations omitted), this Court defined economic damages under Indiana law as:

the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold.

... Economic loss includes such incidental and consequential losses as lost profits, rental expense, and lost time.

*See also Rispens*, 621 N.E.2d at 1089–90. Progressive correctly points out that "property damage" is distinct from "economic damage," at least from the point of view of the policyholder's insurance coverage. And property damage is distinct from business interruption losses even if both result from the same event. However, when addressing the validity vel non of a tort or products liability claim based on failure of a product, the self-destruction of the product through property damage, if caused by an external force, is indistinguishable in consequence from the product's simple failure to function. In both cases, the owner's loss is the value of the product. Thus, the United States Supreme Court and others refer to damage to the product itself as "economic loss" even though it may have a component of physical destruction. Viewing such a loss as purely "economic loss" and not personal or property damage loss is consistent with Indiana law in other contexts as well. *See, e.g., Choung v. Iemma*, 708 N.E.2d 7, 13–14 (Ind.Ct.App.1999) (concluding that plaintiff could not maintain a negligence suit for failure to disclose that home had been relocated onto a newly constructed foundation where damages were purely "economic," i.e., "they did not arise from physical harm to [plaintiff] or [plaintiff's] personal property").

This Court's prior construction of the statute is consistent with the vast majority

of other jurisdictions, with federal products liability law, and with the Restatement of the Law of Torts.

A strong majority of courts have taken the position that the key to whether products liability law or commercial law principles should govern depends on the nature of the loss suffered by the plaintiff. If the plaintiff has suffered loss because the defective product simply malfunctioned or self-destructed, the loss is deemed economic loss within the purview of the Uniform Commercial Code.

Restatement (Third) of Torts § 21 cmt. d (1998) (reporter's note) (collecting cases). Similarly, in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 859, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the United States Supreme Court unanimously held under its admiralty jurisdiction that no "cause of action in tort is stated when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." The Court also concluded that contract law was better suited to resolve these disputes. 476 U.S. at 872–73, 106 S.Ct. 2295. Finally, section 21 of the Restatement of Torts (Third) limits recovery under products liability law for economic loss, defining harm as: "harm to persons or property[, including] economic loss if caused by harm to . . . (c) the plaintiff's property other than the defective product itself." This is a familiar distinction in other contexts. *See, e.g., Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275, 1278–79 (Ind.1980) (construing a contractor's general liability on an insurance policy to cover only damage caused by his defective work or product to property other than that work or product).

We also note that the legislature did not provide for recovery for injury to the product itself, even though it amended the Act after this Court's rulings in *Reed* and *Rispens*. As this Court has recently noted, the legislature is not without recourse if it disagrees with a court's interpretation of a statute. *See Durham v. U–Haul Int'l*, 745 N.E.2d 755, 761 (Ind.2001). Here, the legislature has not acted in the face of two opinions from this Court concluding that the legislature did not intend that damage to the product itself be recoverable under the Products Liability Act. That silence is not insignificant.

Rejection of a tort claim for self-inflicted damage to a product is a choice the legislature is plainly free to make. It is grounded in the distinction between tort and contract law. It also involves a number of different policy considerations. As a general matter, when the product does not operate up to expectations and deprives its user of the benefit of the bargain, commercial law sets forth a comprehensive scheme governing the buyer's and seller's rights. The Supreme Court in *East River* elaborated on several reasons to view the issue as essentially one of commercial law as opposed to a tort. The Court reasoned, "The tort concern with safety is reduced when an injury is only to the product itself." *East River*, 476 U.S. at 871, 106 S.Ct. 2295. In addition, limiting the disappointed consumer to a contract action leaves parties free to determine the terms of their contract under this regime. The consumer may bargain for a warranty, or choose to pay less and forego a warranty. A tort recovery, in effect, creates recovery as a matter of law for some defects, irrespective of any warranty limitation. Presumably the cost of that additional exposure on the part of the manufacturer will be built into its pricing over time.

The insurance companies urge that the damage suffered here was sudden and is therefore covered by the Products Liability Act. In this respect, they argue, the

damage is distinct from that suffered in *Rispens,* where this Court cited as one reason that damage to a watermelon crop was not compensable under the Products Liability Act that it was not "sudden" within the meaning of the statute. 621 N.E.2d at 1088–89. In support of this argument, one insurer notes that when the legislature amended the statute to include coverage for negligence actions it left the "sudden, major" damage requirement intact. We agree with these observations, but do not agree that the issue turns on whether "sudden, major" damage is incurred. That may be the case in many product malfunctions, including those involving no fire or other self-destructive result.[3] It may be a necessary component of a products liability claim, but it is not itself sufficient.

■ Some of the insurance companies raise subsidiary arguments in addition to the basic policy considerations discussed above. Progressive, attempting to distinguish between the vehicle and its component parts, argues that, if defective wiring in the GMC Jimmy was the cause of the fire, "other property" was destroyed under the meaning of the statute. We think this issue has been properly resolved by the United States Supreme Court. *East River* dealt with a failure of components of a turbine. The turbine was properly regarded as one unit, and there was no damage to "other" property within the meaning of the statute. 476 U.S. at 867–68, 106 S.Ct. 2295. The Court reasoned, " 'Since all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself.' " *Id.* (quoting

*Northern Power & Eng'g Corp. v. Caterpillar Tractor Co.,* 623 P.2d 324, 330 (Alaska 1981)). We also observe that it stretches ordinary usage to describe each component as a separate "product" of the manufacturer who often assembles parts from various sources to produce its "product."

The insurance companies' policy arguments for holding manufacturers liable in tort law are more persuasive. The insurers first argue that to fail to hold manufacturers liable encourages them to produce poor quality products. It is true that one rationale for holding manufacturers liable under the Products Liability Act is to put the burden of producing safe products on the party in the best position to do so. We do not believe this argument supports imposition of tort liability in the face of evidence of legislative intent to the contrary. First, if safety is an issue and injury to person or property results, the Act is triggered without the reading the insurance companies seek. Second, if these defects remain uncorrected, manufacturers are exposed to enormous liability under tort law. The rule the plaintiff companies urge would amount to an expanded warranty as a matter of law, but one the consumer will ultimately pay for in the form of pricing increases to support the expanded warranty exposure.

We acknowledge that in some cases, including some in this appeal, the absence of personal harm was a matter of luck in an event that could have resulted in personal injury. In *Sanco,* 579 F.Supp. at 897, although recognizing the rule against recovery of purely economic damages in Indiana, the court suggested that our

---

**3.** The insurers' reliance on *Ford Motor Co. v. Reed,* 689 N.E.2d 751 (Ind.Ct.App.1997), is misplaced. In that case, the subrogated insurer of a vehicle that burst into flames was one of the plaintiffs. However, the parties in *Reed* did not raise, and the Court of Appeals did not address, the question whether the subrogated insurer could recover for damage to the vehicle itself.

courts might allow a claim where "the absence of personal injury is merely fortuitous, such as when an object explodes but does not inflict personal injuries on anyone." This is the "intermediate rule" adopted in some states, which generally relegates harm to the product itself to contract law, but allows a claim under products liability law when the product presents a risk of harm to person or property. *See, e.g., Northern Power,* 623 P.2d at 329. This intermediate approach was rejected by the Supreme Court in *East River.* 476 U.S. at 870, 106 S.Ct. 2295 ("The intermediate positions, which essentially turn on the degree of risk, are too indeterminate to enable manufacturers easily to structure their business behavior."). Whatever support there may arguably be for the interpretation of the statute as covering damages to the product itself, there is no support in the statute for the contention that the intermediate rule is the law in Indiana.[4] If such a position is to be adopted, that is for the legislature to do and not this Court.

Finally, the insurance companies urge that it is unfair for them to bear the burden of the cost of compensating consumers for products that are defective. The insurers can rewrite their policy exclusions to deal with this if they choose. Presumably competitive forces compel them to cover these risks, but if some insurers seek to write the coverage out of their policies, this is their choice. To the

extent insurance regulators insist on such coverage, the fairness of that position is not an issue for this Court. As the Supreme Court pointed out in *East River,* one efficient way for economic losses to be managed is through insurers because they have the ability to adjust their rates to reflect their loss experience. 476 U.S. at 871–72, 106 S.Ct. 2295. The legislative policy to favor this means of addressing the problem is entirely rational. If it is to be changed, the General Assembly must make that determination.

## Conclusion

We affirm the trial court's grant of summary judgment in *Progressive Insurance Co. v. General Motors Corp.* and *Progressive Insurance Co. v. Ford Motor Co.,* and reverse and remand to the trial court for entry of summary judgment in the manufacturers' favor in *Ford Motor Co. v. Progressive Insurance Co., General Motors Corp. v. United Farm Bureau Insurance,* and *Ford Motor Co. v. Foremost Insurance Co.*

SHEPARD, C.J., and SULLIVAN, J., concur.

RUCKER, J., concurs in result with separate opinion in which DICKSON, J., concurs.

RUCKER, Justice, concurring in result.

Because of the doctrine of *stare decisis,* I concur in the result reached by the ma-

---

4. Progressive argues Indiana's approach to tort recovery parallels that of "intermediate states," in particular Oregon. Progressive finds support for this proposition in *Reed* and *Rispens,* noting that this Court has outlined three factors to consider in determining whether, as a matter of law, property damage qualifies as "sudden" and "major." These factors are: the nature of the defect alleged, the type of risk presented, and the manner in which the injury arose. *Reed,* 621 N.E.2d at 1075–76; *Rispens,* 621 N.E.2d at 1088–89.

These factors mirror those identified in *East River* as appropriate in intermediate states to determine whether a products liability action should be permitted even though the product injures only itself. 476 U.S. at 869–70, 106 S.Ct. 2295. These factors may bear on whether the damage was sudden and major but, as noted above, this issue is distinct from whether the statute contemplates a claim even if the harm was limited to damage to the product itself.

jority. Both *Martin Rispens & Son v. Hall Farms, Inc.,* 621 N.E.2d 1078 (Ind. 1993), and *Reed v. Central Soya Co., Inc.,* 621 N.E.2d 1069 (Ind.1993), compel the outcome in this case.

DICKSON, J., concurs.