IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 5, 2009 Session

LINCOLN GENERAL INSURANCE COMPANY v.
DETROIT DIESEL CORPORATION ET AL.

Rule 23 Certified Question of Law
United States District Court for the Middle District of Tennessee
No. 3:08-CV-00368    Aleta A. Trauger, Judge

No. M2008-01427-SC-R23-CQ - Filed August 21, 2009

We accepted the following question of law certified by the United States District Court for the Middle District of Tennessee: Does Tennessee law recognize an exception to the economic loss doctrine under which recovery in tort is possible for damage to the defective product itself when the defect renders the product unreasonably dangerous and causes the damage by means of a sudden, calamitous event? We answer this question in the negative.

**Tenn. Sup. Ct. R. 23 Certified Question of Law**

JANICE M. HOLDER, C.J., delivered the opinion of the court, in which CORNELIA A. CLARK, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

James P. Catalano, Nashville, Tennessee, and Steven B. Epstein, Raleigh, North Carolina, for the petitioner, Prevost Car (US) Inc.

Jeremy L. Jones and John W. Reis, Charlotte, North Carolina, and Max Smith, Nashville, Tennessee, for the respondent, Lincoln General Insurance Company.

James C. Bradshaw, III, Nashville, Tennessee, for the defendant, Detroit Diesel Corporation.

**OPINION**

**Facts and Procedural History**

Senators Rental, Inc. ("Senators Rental"), an insured of Lincoln General Insurance Company ("Lincoln General"), purchased a bus manufactured by Prevost Car (US) Inc. ("Prevost"). The engine in the bus was produced by Detroit Diesel Corporation ("Detroit Diesel"). On May 8, 2006, the bus was traveling south on Interstate 65 near Goodlettsville, Tennessee, when it caught fire due to an alleged engine defect. The fire did not cause personal injury or damage to any property other

than the bus itself. Lincoln General paid Senators Rental $405,250 for the fire damage pursuant to its insurance policy.

Lincoln General filed a complaint against Prevost and Detroit Diesel. The complaint included counts of breach of express and implied warranties, negligence, and strict products liability. Prevost and Detroit Diesel removed the case to the United States District Court for the Middle District of Tennessee. Prevost filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Lincoln General's tort claims are barred by the economic loss doctrine.[1]

On July 1, 2008, the United States District Court certified one question of law to this Court, which we accepted pursuant to Tennessee Supreme Court Rule 23.[2]

## Analysis

The United States District Court certified the following question of law: Does Tennessee law recognize an exception to the economic loss doctrine under which recovery in tort is possible for damage to the defective product itself when the defect renders the product unreasonably dangerous and causes the damage by means of a sudden, calamitous event?

This certified question presupposes that Tennessee recognizes the economic loss doctrine, a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss. See generally, Vincent R. Johnson, The Boundary-Line Function of the Economic Loss Rule, 66 Wash. & Lee L. Rev. 523 (2009). Although this Court has never expressly adopted the economic loss doctrine, we expressed agreement with the policies underlying the doctrine in Ritter v. Custom Chemicides, Inc., 912 S.W.2d 128 (Tenn. 1995). In Ritter, this Court stated that "Tennessee has joined those jurisdictions which hold that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence. . . . In Tennessee, the consumer does not have an action in tort for economic damages

---

[1] Detroit Diesel has taken no position regarding the motion to dismiss.

[2] Tennessee Supreme Court Rule 23, section 1 provides as follows:

> The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

In answering the certified question, we assume the facts are as stated in the United States District Court for the Middle District of Tennessee's certification order. See Tenn. Sup. Ct. R. 23, § 3(B).

under strict liability."[3]  Id. at 133 (footnote omitted); see also First Nat'l Bank of Louisville v. Brooks Farms, 821 S.W.2d 925, 930-31 (Tenn. 1991) (finding that actions under the Tennessee Products Liability Act are limited to those brought on account of personal injury, death, or property damage and do not include actions brought for pecuniary loss).

The economic loss doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property.  In this context, "economic loss" is defined generally as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold."  Comment, Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?, 114 U. Pa. L. Rev. 539, 541 (1966).  Two types of economic loss, direct and consequential, occur when a defective product is damaged. See, e.g., Restatement (Third) of Torts:  Products Liability § 21, cmt. d (1998).  Direct economic loss may be measured by the defective product's cost of repair or replacement.  Id.  Consequential economic losses, such as lost profits, result from the product owner's inability to use the product.  Id.

The question certified presents us with our first opportunity to examine the proper application of the economic loss doctrine when only the defective product is damaged.  In the seminal case of East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 868-71 (1986), the United States Supreme Court examined three approaches to the economic loss doctrine used by various state and federal courts, which it described as the "majority," "minority," and "intermediate" positions, and adopted the majority approach.  In East River, a shipbuilder contracted with a manufacturer for the production of turbines to propel four oil-transporting super tankers.  While at sea, the turbines malfunctioned due to design and manufacturing defects.  Only the turbines themselves were damaged.  In a unanimous decision, the Supreme Court held that the economic loss doctrine barred the shipbuilder's products liability suit in admiralty against the manufacturer.

In adopting the "majority approach" to the economic loss doctrine, the Supreme Court chose a bright-line rule that precludes recovery in tort when a product damages itself without causing personal injury or damage to other property.  In reaching this conclusion, the Supreme Court observed that "[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong."  Id. at 871.  Specifically, the Supreme Court reasoned that damage to a defective product is merely a failure of the product to meet the purchaser's expectations, a risk that the parties had the opportunity to allocate by negotiating contract terms and acquiring insurance.  Id. at 871-72.  In contrast, the "'cost of an injury and the loss of time or health may be an overwhelming misfortune,' and one the person is not prepared to meet."  Id. at 871 (quoting Escola v. Coca Cola Bottling Co., 150 P.2d 436, 441 (Cal. 1944)).  Finally, the

---

[3] The Tennessee Court of Appeals has cited Ritter consistently to support its application of the economic loss doctrine. See McLean v. Bourget's Bike Works, Inc., No. M2003-01944-COA-R3-CV, 2005 WL 2493479, at *5 (Tenn. Ct. App. Oct. 7, 2005); Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc., 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003); Tenn. Farmers Mut. Ins. Co. v. Ford Motor Co., No. W2001-00046-COA-R3-CV, 2002 WL 1332492, at *3 (Tenn. Ct. App. June 17, 2002); Trinity Indus., Inc. v. McKinnon Bridge Co., 77 S.W.3d 159, 173 (Tenn. Ct. App. 2001).

Supreme Court expressed concern that permitting recovery in tort for purely economic loss could subject the manufacturer to an indefinite amount of damages. Id. at 874. A warranty action, on the other hand, has a "built-in limitation on liability." Id.

In contrast, the "minority approach" to the economic loss doctrine permits tort recovery for purely economic loss.[4] The Supreme Court explained that jurisdictions following the minority approach do not distinguish between economic loss and personal injury or property damage because in either circumstance, the damage was caused by the defendant's conduct. Id. at 869; see Farm Bureau Ins. Co., 878 S.W.2d at 743. In the minority view, the manufacturer's duty to produce non-defective products and tort law's corresponding concern with safety apply equally when the harm is purely economic. E. River S.S. Corp., 476 U.S. at 868-69; see Thompson, 647 P.2d at 337. Ultimately, the Supreme Court rejected the minority approach because it "fails to account for the need to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages." E. River S.S. Corp., 476 U.S. at 870-71.

Lincoln General urges us to recognize a variation of the third approach to the economic loss doctrine, the "intermediate approach." States that follow the intermediate approach permit tort recovery for damage to the defective product alone under limited exceptions that "turn on the nature of the defect, the type of risk, and the manner in which the injury arose." Id. at 870. The exception advanced by Lincoln General would permit recovery for unreasonably dangerous products that cause damage to themselves during sudden, calamitous events.[5] This exception would require courts to distinguish between those products that expose a product owner to an unreasonable risk of injury during an abrupt and disastrous occurrence and those products that merely disappoint a product owner's expectations. See id. at 869-70.

The East River Court rejected the dichotomy between disappointed and endangered product owners as "too indeterminate to enable manufacturers easily to structure their business behavior." Id. at 870. The Court also found unpersuasive an exception that focuses on the manner in which the harm occurred:

---

[4] Our research indicates that tort recovery for purely economic loss is permissible in at least three states. See Farm Bureau Ins. Co. v. Case Corp., 878 S.W.2d 741, 743 (Ark. 1994); La. Rev. Stat. Ann. § 9:2800.53(5) (2009); Thompson v. Neb. Mobile Homes Corp., 647 P.2d 334, 336-37 (Mont. 1982); see also Presnell Constr. Managers, Inc. v. EH Constr., LLC, 134 S.W.3d 575, 588 (Ky. 2004) (Keller, J., concurring) (explaining that Kentucky appellate courts have never expressly adopted the economic loss rule).

[5] A number of cases express agreement with a form of the intermediate approach based on unreasonably dangerous products; sudden, calamitous events; or both. See Pratt & Whitney Can., Inc. v. Sheehan, 852 P.2d 1173, 1181 (Alaska 1993); Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp., 694 P.2d 198, 209-10 (Ariz. 1984), abrogated on other grounds by Phelps v. Firebird Raceway, Inc., 111 P.3d 1003 (Ariz. 2005); Vulcan Materials Co. v. Driltech, Inc., 306 S.E.2d 253, 257 (Ga. 1983); Am. Fire and Cas. Co. v. Ford Motor Co., 588 N.W.2d 437, 439-40 (Iowa 1999); Morris v. Osmose Wood Preserving, 667 A.2d 624, 632 (Md. 1995); Russell v. Ford Motor Co., 575 P.2d 1383, 1386-87 (Or. 1978); Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc., 831 P.2d 724, 733-35 (Wash. 1992); Anderson v. Chrysler Corp., 403 S.E.2d 189, 192-93 (W. Va. 1991).

> We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law.

Id. (citations omitted).

We agree with the United States Supreme Court that the owner of a defective product that creates a risk of injury and was damaged during a fire, a crash, or other similar occurrence is in the same position as the owner of a defective product that malfunctions and simply does not work. It follows that the remedies available to these similarly situated product owners should derive from the parties' agreements, not from the law of torts, lest we disrupt the parties' allocation of risk. See Prosser & Keeton on the Law of Torts § 101(3), at 709 (5th ed. 1984) ("[R]isk of harm to the product itself due to the condition of the product would seem to be a type of risk that the parties to a purchase and sale contract should be allowed to allocate pursuant to the terms of the contract."). To hold otherwise would make it more difficult for parties to predict the consequences of their business transactions, the cost of which ultimately falls on consumers in the form of increased prices. See E. River S.S. Corp., 476 U.S. at 872 ("The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified."); Bocre Leasing Corp. v. Gen. Motors Corp. (Allison Gas Turbine Div.), 84 N.Y.2d 685, 692 (1995) ("In essence, all consumers would subsidize or 'pay premiums' for purchasers of assertedly 'unduly dangerous' products.").

It is difficult, moreover, for parties and courts to apply a rule that focuses on the degree of risk and the manner in which the product was damaged as opposed to a rule that hinges on harm the plaintiff actually sustains. Lincoln General suggests, nonetheless, that adopting the bright-line rule espoused in East River would come at too great a price—the decreased safety of Tennessee citizens. We believe, however, that deterrence is adequately promoted by existing law that permits tort recovery for personal injury and damage to property other than the product itself. As explained by the Illinois Supreme Court, "[b]ecause no manufacturer can predict with any certainty that the damage his unsafe product causes will be confined to the product itself, tort liability will continue to loom as a possibility." Trans States Airlines v. Pratt & Whitney Can., Inc., 682 N.E.2d 45, 53 (Ill. 1997).

Finally, Lincoln General argues that adopting the East River approach is inconsistent with the General Assembly's intentions under the Tennessee Products Liability Act of 1978, Tenn. Code Ann. §§ 29-28-101 to 108 (2000). We disagree. Application of the Tennessee Products Liability Act is limited to "actions brought for or on account of personal injury, death or *property damage*." Tenn. Code Ann. § 29-28-102(6) (emphasis added). We interpret "property damage" to mean

damage to property other than the defective product. See Progressive Ins. Co. v. Gen. Motors Corp., 749 N.E.2d 484, 487-89 (Ind. 2001). A product's self-destruction is naturally understood as "economic loss" because it "is indistinguishable in consequence from the product's simple failure to function." Progressive Ins. Co., 749 N.E.2d at 488. This Court previously held in Ritter that the Tennessee Products Liability Act does not afford the right to recover purely economic losses. 912 S.W.2d at 132-33; see also First Nat'l Bank, 821 S.W.2d at 931 ("[T]he rights and liabilities of parties to actions based on diminished economic expectations can be better adjudicated on other legal theories."); Olin Corp. v. Lambda Elecs., Inc., 39 F. Supp. 2d 912, 914 (E.D. Tenn. 1998). In the almost fourteen years since our decision in Ritter, the General Assembly has not amended the Tennessee Products Liability Act to permit claims for purely economic loss.

In our view, the East River approach fairly balances the competing policy interests and clearly delineates between the law of contract and the law of tort. We therefore hold that Tennessee law does not recognize an exception to the economic loss doctrine under which recovery in tort is possible for damage to the defective product itself when the defect renders the product unreasonably dangerous and causes damage by means of a sudden, calamitous event.

In so holding, we join the majority of state appellate courts that have considered the adoption of an exception to the economic loss doctrine based on unreasonably dangerous products; sudden, calamitous events; or both. See Airport Rent-A-Car, Inc. v. Prevost Car, Inc., 660 So.2d 628, 631-32 (Fla. 1995); Trans States Airlines, 682 N.E.2d at 54-55; Progressive Ins. Co., 749 N.E.2d at 491; Jordan v. Case Corp., 993 P.2d 650, 651-52 (Kan. Ct. App. 1999); S.J. Groves & Sons Co. v. Aerospatiale Helicopter Corp., 374 N.W.2d 431, 433-35 (Minn. 1985), overruled on other grounds by Hapka v. Paquin Farms, 458 N.W.2d 683 (Minn. 1990); Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co., 703 S.W.2d 901, 902-03 (Mo. 1986); Nat'l Union Fire Ins. Co. of Pittsburgh v. Pratt & Whitney Can., Inc., 815 P.2d 601, 604-05 (Nev. 1991); Utah Int'l, Inc. v. Caterpillar Tractor Co., 775 P.2d 741, 743-44 (N.M. Ct. App. 1989); Bocre Leasing Corp., 84 N.Y.2d at 688-94; Coop. Power Ass'n v. Westinghouse Elec. Corp., 493 N.W.2d 661, 665-66 (N.D. 1992); REM Coal Co. v. Clark Equip. Co., 563 A.2d 128, 132-34 (Pa. Super. Ct. 1989); Gen. Cas. Co. of Wis. v. Ford Motor Co., 592 N.W.2d 198, 200 (Wis. 1999); Cont'l Ins. v. Page Eng'g Co., 783 P.2d 641, 647-49 (Wyo. 1989).[6]

Finally, our holding is consistent with the Restatement (Third) of Torts: Products Liability (1998). Section 21 specifically excludes harm to "the defective product itself" from the definition

---

[6] In addition, many federal courts exercising diversity jurisdiction have predicted that other states would also follow the bright-line rule of East River and decline to recognize an intermediate position. See Lockheed Martin Corp. v. RFI Supply, Inc., 440 F.3d 549, 553-55 (1st Cir. 2006) (applying New Hampshire law); Detroit Edison Co. v. NABCO, Inc., 35 F.3d 236, 242-43 (6th Cir. 1994) (applying Michigan law); Laurens Elec. Coop., Inc. v. Altec Indus., Inc., 889 F.2d 1323, 1325-26 (4th Cir. 1989) (applying South Carolina law); Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 504 (D.N.J. 1999) (applying New Jersey law); Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 94 (D. Mass. 1998) (applying Maine and Massachusetts law); Corsica Coop. Ass'n v. Behlen Mfg. Co., 967 F. Supp. 382, 387 (D.S.D. 1997) (applying South Dakota law); Vt. Plastics, Inc. v. Brine, Inc., 824 F. Supp. 444, 451 (D. Vt. 1993) (applying Vermont law).

of "harm to persons or property" for which economic loss is recoverable.[7] Comment (d) to section 21 further explains:

> A plausible argument can be made that products that are dangerous, rather than merely ineffectual, should be governed by the rules governing products liability law. However, a majority of courts have concluded that the remedies provided under the Uniform Commercial Code—repair and replacement costs and, in appropriate circumstances, consequential economic loss—are sufficient. Thus, the rules of this Restatement do not apply in such situations.

## Conclusion

In addressing the United States District Court's certified question, we are persuaded that the rationale proffered by the United States Supreme Court in East River is sound. We therefore hold that Tennessee does not recognize an exception to the economic loss doctrine under which recovery in tort is possible for damage to the defective product itself when the defect renders the product unreasonably dangerous and causes the damage by means of a sudden, calamitous event. The costs of this appeal are taxed to the respondent, Lincoln General Insurance Company, for which execution may issue if necessary.

_____
JANICE M. HOLDER, CHIEF JUSTICE

---

[7] Restatement (Third) of Torts: Products Liability § 21 provides, in its entirety:

> For purposes of this Restatement, harm to persons or property includes economic loss if caused by harm to:
> (a) the plaintiff's person; or
> (b) the person of another when harm to the other interferes with an interest of the plaintiff protected by tort law; or
> (c) the plaintiff's property *other than the defective product itself*."

(emphasis added).