# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 13, 2019 Session

## CITY OF FRANKLIN, TENNESSEE v. W. L. HAILEY & CO., INC. ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 46766     Joseph A. Woodruff, Judge**

_____

### No. M2018-01535-COA-R3-CV

_____

Appellant city appeals from the dismissal of its negligent misrepresentation claim on the basis of the economic loss doctrine, arguing that Tennessee law recognizes an exception to the economic loss doctrine for negligent misrepresentations. Because we conclude that Tennessee law does not recognize a negligent misrepresentation exception to the economic loss doctrine, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

L. Wearen Hughes, John W. Dawson, IV, and Sarah B. Miller; Nashville and Shauna R. Billingsley and Tiffani Pope; Franklin, Tennessee, for the appellant, City of Franklin, Tennessee.

Donald Capparella, Tyler Chance Yarbro, and Vic L. McConnell, Nashville, Tennessee for the appellant, Smith Seckman Reid, Inc.

John A. Day and Elizabeth Sitgreaves, Brentwood, Tennessee and William Earl Touchstone, Houston, Texas, for the appellee, Hobas Pipe USA, LP.

## OPINION

### I.     FACTS AND PROCEDURAL HISTORY

On November 17, 2017, the City of Franklin ("the City") brought suit against defendants W.L. Hailey & Company ("Hailey"), Smith Seckman Reid, Inc. ("SSR" and together with the City, "Appellants"), and Hobas Pipe USA, LP ("Hobas"), in the Chancery Court for Williamson County ("the trial court"). The City alleged, *inter alia*, claims for breach of contract, negligence, breach of warranty, and negligent

misrepresentation. These claims arose out of a construction project that the City undertook from 2001–2003, in which the City constructed a sewage line for its residents. The City retained SSR to design the sewage line project. Following a bidding process based on the designs created by SSR, Hailey was awarded the project. Eventually, Hobas was selected to provide the pipes necessary to convey the sewage from residents to a treatment facility. The project was substantially completed in 2003. According to the complaint, however, the sewage line, known as the Interceptor, failed beginning in 2017, necessitating emergency repair work throughout the system. Eventually, flood damage led to portions of the Interceptor being replaced.

Relevant to this appeal, Hobas filed a motion to dismiss on December 20, 2017, wherein Hobas alleged that the gravamen of the City's claims was for products liability, and that the ten-year statute of repose applicable to products liability claims barred the action. At the same time, Hobas filed an answer to the complaint denying the material allegations against it and raising a number of affirmative defenses.

The City responded to Hobas's motion on January 19, 2018. As an initial matter, the City denied that its claims against Hobas should be characterized as a products liability action because the claims were not cognizable under the Tennessee Products Liability Act ("the Products Liability Act" or "the Act").[1] As such, the City argued that the Products Liability Act statute of repose did not apply. To the extent that any statute of limitations was applicable, however, the City submitted that application thereof was barred by the doctrine of *nullum tempus occurrit regi*. *See **Hamilton Cty. Bd. of Educ. v. Asbestospray Corp.***, 909 S.W.2d 783, 785 (Tenn. 1995), *as clarified on reh'g* (Nov. 20, 1995) ("The common law doctrine of *nullum tempus occurit regi*, which is literally translated as "time does not run against the king," prevents an action brought by the State from being dismissed due to the expiration of the statutory period of limitations normally applicable to the specific type of action.").

On January 29, 2018, Hobas filed an amended motion to dismiss. In addition to its statute of limitations argument, Hobas raised two additional arguments in support of dismissal: (1) that the economic loss doctrine prevented a negligent misrepresentation claim, and (2) there was no privity between Hobas and the City so as to support a warranty claim.

The City of Franklin moved for permission to amend its complaint on March 8, 2018. The trial court granted the motion by agreement on March 22, 2018. The amended complaint contained more specific allegations regarding the alleged negligent misrepresentation by Hobas, as relevant to this appeal. Specifically, the amended complaint alleged as follows:

---

[1] Specifically, in this response, the City admitted that there was no damage to persons or other property due to the failure of the Hobas pipe.

14. As part of its bid for the Project, Hailey presented options or alternates for the type of pipe to be used in the Project, including ductile iron pipe and centrifugally cast fiberglass reinforced polyester pipe.

15. SSR assisted [the City] with evaluation of the pipe options. The evaluation of centrifugally cast fiberglass reinforced polyester pipe included pipe manufactured by Hobas.

16. During this evaluation, Hobas represented that its fiberglass pipe had an anticipated life of over 100 years. Hobas also provided information purporting to show that its fiberglass pipe was acceptable and appropriate for the Project's design parameters.

17. Based on SSR's evaluation of the options for the [project] and the information presented by Hobas during that evaluation, [the City] selected Hobas centrifugally cast fiberglass reinforced polyester pipe for the [project].

\* \* \*

78. Hobas acted in the course of its business and with a pecuniary interest in its presentation and sale of its fiberglass pipe for use in the Project.

79. Hobas supplied faulty information to [the City] regarding the anticipated life of its fiberglass pipe.

80. Hobas also supplied faulty information to [the City] regarding the stiffness of the pipe, which testing shows was below the specified stiffness, including that indicated on the pipe.

81. Hobas failed to exercise reasonable care in obtaining and/or communicating information about the anticipated life of its pipe and the stiffness of its pipe.

82. To the extent the information provided by Hobas purporting to show that its fiberglass pipe was acceptable and appropriate for the Project's was faulty, Hobas failed to exercise reasonable care.

83. In choosing Hobas pipe, [the City] justifiably expected Hobas to supply to the project participants information that was not faulty and relied upon what turned out to be faulty information provided by Hobas.

84. Faulty information from Hobas proximately caused or contributed to the Interceptor failures and resulting damages to [the City].

85. [The City] has suffered, and continues to suffer, damages as a result of Hobas' negligent misrepresentations in an amount to be proven at trial and consisting of damages to, and costs to repair (including replacing), some of the pipe.

The City thereafter responded to Hobas's amended motion to dismiss, arguing that Tennessee law recognizes an exception to the economic loss doctrine for claims of negligent misrepresentation, citing **John Martin Co. v. Morse/Diesel, Inc.**, 819 S.W.2d 428 (Tenn. 1991). Hobas later responded in opposition, arguing that **John Martin** was not controlling.

The trial court held a hearing on the motion to dismiss on March 22, 2018, and entered its memorandum and order granting the motion on May 18, 2018. Therein, the trial court found that (1) the City had not asserted a products liability claim, but that if it had, the ten-year statute of repose would have applied; (2) the breach of warranty claims could not survive because there was no contract between the parties; and (3) that the economic loss doctrine barred the City's negligent misrepresentation claim. The parties later joined in asking the trial court designate its ruling as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, which the trial court did on July 24, 2018. The City thereafter timely appealed to this Court.

## II. ISSUES PRESENTED

This appeal involves a single issue: Whether the trial court erred in ruling that the economic loss doctrine barred the City's claim of negligent misrepresentation against Hobas.[2]

## III. STANDARD OF REVIEW

This case was resolved on a motion to dismiss. In considering a motion to dismiss, courts "'construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007)). A motion to dismiss should be granted only where the plaintiff "'can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). Our review of the trial court's decision to grant Hobas's motion to dismiss is de novo with no presumption of correctness. *Id.*

## IV. DISCUSSION

The sole issue presented in this appeal involves whether the trial court correctly concluded that the City's claim that it was harmed by Hobas's negligent misrepresentations concerning the pipe was barred by the economic loss doctrine. Tennessee officially recognized and adopted the economic loss doctrine at issue in this case in *Lincoln General Insurance Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487 (Tenn. 2009). "The economic loss doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property." *Id.* at 489. This doctrine generally "precludes recovery in tort when a product damages itself without causing personal injury or damage to other property." *Id.*

---

[2] The City raised an additional issue on the condition that the issue was raised in Hobas's appellate brief. Because Hobas raised no issues beyond the economic loss issue raised in the City's initial brief, we will not analyze this additional issue.

Generally, the purpose of the doctrine is to avoid the "collision between warranty and contract on the one hand and the torts of strict liability, negligence, fraud and misrepresentation on the other." *Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.,* 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001) (quoting James J. White & Robert S. Summers, *Uniform Commercial Code* § 10-5, 580 (4th ed. 1995)).

Although the doctrine takes many forms throughout the United States, see *Milan Supply Chain Sols. Inc. v. Navistar Inc.*, No. W2018-00084-COA-R3-CV, 2019 WL 3812483, at *4 (Tenn. Ct. App. Aug. 14, 2019) (discussing "lack of uniformity in the approaches taken"), the question in this case is whether the doctrine adopted by the Tennessee Supreme Court bars the particular claims in this case. Hobas contends that the doctrine indeed bars the City's tort claims because it is undisputed for purposes of appeal that the sole damage that occurred in this case was to the Interceptor system itself. In contrast, Appellants contend that Tennessee recognizes an exception to the economic loss doctrine for claims involving negligent misrepresentation.

To resolve this dispute, we begin at the beginning. Although Tennessee did not formally recognize the economic loss doctrine at issue in this case for nearly another two decades, a form of the doctrine was discussed by the Tennessee Supreme Court as early as 1991 in *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428 (Tenn. 1991). In *John Martin*, the plaintiff subcontractor filed suit against its construction manager, alleging that the construction manager negligently supplied information that it relied upon in a construction project. Eventually, the defendant filed a motion for summary judgment on the ground that "economic losses are not recoverable for negligence absent privity." *Id.* at 430. The trial court granted the motion, and the Tennessee Court of Appeals reversed, holding that "economic loss may be recoverable by parties not in privity upon a showing of 'negligence, misrepresentation, and justifiable reliance.'" *Id.* (quoting *John Martin Co., Inc. v. Morse/Diesel, Inc.*, No. 918, 1990 WL 28776, at *20 (Tenn. Ct. App. March 20, 1990)).

Before the Tennessee Supreme Court, the defendant argued that the plaintiff should not be allowed to recover for purely economic losses even under a theory of negligence in the absence of privity. Our high court also noted that "the amicus curiae brief in support of the defendant's position argues in favor of the 'economic loss doctrine': a general principle that prohibits the recovery of purely economic damages for negligence when the plaintiff lacks privity of contract with the defendant." *Id.* The amicus curiae did acknowledge an exception to what it deemed the "time-honored rule": actions for negligent misrepresentations "usually provided by a professional, in determining whether to enter into or participate in a business transaction." Because the misrepresentation did not regard "the transaction," but the day-to-day performance of the contract, the amicus curiae argued that the exception would not apply. In contrast, the plaintiff asserted that it had no choice but to rely on the manager's negligent misrepresentations with regard to the design and negligent supervision of the project.

In resolving this dispute, the Tennessee Supreme Court acted swiftly to make one point clear: "This is not a products liability case." *Id.* at 431. Instead, the court characterized the claim as involving the plaintiff's reliance on the defendant's "misrepresentation in the performance of his contracted service" causing the plaintiff to "experience[] business losses as a result." *Id.* The court therefore quickly dispensed with cases involving only claims of products liability in respect to design defects" as those "losses suffered were caused by defective products, not misguidance or misdirection in the performance of services." *Id.* For claims involving misrepresentation, rather than products liability, the court found guidance in the *Restatement (Second) of Torts* § 552 (1977), which had been previously adopted by the Tennessee Supreme Court in ***Howell v. Betts***, 211 Tenn. 134, 362 S.W.2d 924, 925–926 (Tenn. 1962). Section 552 provided as follows:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in the obtaining or communicating of the information.
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1), is limited to loss suffered
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

***John Martin***, 819 S.W.2d at 431 (quoting *Restatement (Second) of Torts* § 552). The court explicated that this provision allows recovery in the absence of privity where

> (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and
> (2) the defendant supplies faulty information meant to guide others in their business transaction; and
> (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and
> (4) the plaintiff justifiably relies upon the information.

*Id.* Moreover, section 552 explicitly allows recovery of merely "pecuniary loss[.]" *Restatement (Second) of Torts* § 552. Thus, the ***John Martin*** court recognized that the privity requirement had been "dispensed with . . . for actions in tort based upon negligent

misrepresentation against" certain professionals, with "no distinction based on the nature of the profession." *Id.* at 434. The supreme court therefore affirmed the court of appeals's decision to reinstate the plaintiff's claim for economic losses resulting from a negligent misrepresentation despite the lack of privity. *Id.* at 435–436.

The Tennessee Supreme Court was presented with a second opportunity to consider a claim for purely economic losses in *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128 (Tenn. 1995). In *Ritter*, the plaintiffs sued the defendant manufacturer in federal court for damages to their tomato crop. *Id.* at 129. The plaintiffs claimed that the manufacturer negligently misrepresented a product to protect tomato plants from frost in advertisements directed at plaintiffs and other commercial growers, that plaintiffs relied upon these misrepresentations to purchase the product, and the product caused extensive damage to the plaintiffs' tomato crop, resulting in economic losses. *Id.* The district court granted summary judgment as to several claims including breach of warranty and negligent misrepresentation. *Id.* The plaintiff appealed only the claim for negligent misrepresentation. *Id.* The United States Court of Appeals for the Sixth Circuit thereafter sent two certified questions to the Tennessee Supreme Court:

> (1) Whether the tort of negligent misrepresentation applies only to professionals and others who specialize in providing information as a service; and not to commercial entities or businesses which allegedly supply misleading information for the guidance of others in their business transactions; and
> (2) Whether a party alleging negligent misrepresentation, in order to recover "economic losses," must be in privity of contract with the defendant.

*Id.* Although the court answered both certified questions in the negative, it ultimately ruled that dismissal of the plaintiff's claims for only pecuniary losses was appropriate.

To reach this result, the court first recognized that there were several types of misrepresentation recognized by Tennessee law: (1) fraud and deceit; (2) negligent misrepresentation under Section 552 of the Restatement, as described in *John Martin*, *supra*; and (3) strict liability under Section 402B of the *Restatement (Second) of Torts* (1965). The court stated that only the latter two were at issue in the present case. As to Section 552 liability, the court noted that prior cases had confirmed that privity was not a prerequisite for liability thereunder. *Id.* at 130–31. The court also rejected the defendant's contention that this rule applies only to "professionals," as not being supported by the language of Section 552 or prior Tennessee caselaw. Rather, the *Ritter* court held that Section 552's language "obviously includes non-professionals involved in certain business activities or transactions" including construction managers, *John Martin*, 819 S.W.2d at 431, accountants, *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d

592, 595 (Tenn. 1991), the seller of a log home kit, **Stamp v. Honest Abe Log Homes, Inc.**, 804 S.W.2d 455, 458 (Tenn. Ct. App. 1990), a landlord, **Keller v. West-Morr Investors, Ltd.**, 770 S.W.2d 543, 547 (Tenn. Ct. App. 1988), and a seller of real estate. **Chastain v. Billings**, 570 S.W.2d 866, 868 (Tenn. Ct. App. 1978).

This conclusion, however, did not end the court's inquiry. Rather, the court emphasized that Section 552 further requires that the defendant supplied false information and failed to exercise reasonable care in obtaining or communicating the information. **Ritter**, 912 S.W.2d at 131. After reviewing the plaintiff's complaint, the high court found allegations as to these essential elements lacking:

> There is no identification of the information supplied and no assertion that information supplied was false. Nor is there any identification of negligence committed by the defendant in obtaining or communicating information relied upon by the plaintiffs. Advertisements and even direct statements that the product was "effective" does not constitute proof that the defendant supplied false information for the guidance of others. The allegation that the product harmed the plaintiffs' crops is not an allegation that the defendant was negligent in obtaining or communicating information. On the alleged facts, there is no basis for finding either of the essentials of Section 552(1), that the defendant supplied false information for the guidance of others in a business transaction, or that the defendant did not exercise reasonable care or competence in obtaining or communicating the information.

**Id.** Given the absence of allegations of negligence, the **Ritter** court concluded that the plaintiffs' claims fell more squarely within an action for strict liability under Section 402B. As the court explained, however,

> Section 402B imposes strict liability upon a seller for misrepresentation of material facts concerning the character or quality of a chattel sold by it, even in the absence of negligence and privity of contract. However, liability under Section 402B is limited to physical harm to a person or property and does not extend to economic loss. Even the description of the loss reflected in the Sixth Circuit's order, "there was extensive damage to their crops," suggests physical damage to property for which recovery can be had under Section 402B. However, since the plaintiffs sued for "economic damages resulting from the lost profits," there can be no recovery under Section 402B.

**Id.** at 131–32. In reaching this result, the court recognized its prior emphasis on the fact that "Section 552 does not apply to products liability cases[.]" **Id.** at 132 (citing **John Martin**, 819 S.W.2d at 431). Because the "losses suffered by the plaintiffs in this case

- 8 -

were caused by a defective product, not misguidance or misdirection in the performance of services," recovery under Section 552 was not available. Instead, the court opined that its decision reaffirmed the principle "that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence." *Id.* at 133 (footnote omitted).

More than a decade following the decision in *Ritter*, the economic loss doctrine was put squarely before the Tennessee Supreme Court in *Lincoln General Insurance Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487 (Tenn. 2009). In *Lincoln General*, a rental company purchased a bus manufactured by the defendants. *Id.* at 488. The bus later caught fire due to a manufacturing defect; the fire did not cause any personal injuries or property damage to anything other than the bus itself. The plaintiff, the rental company's insurance provider, filed suit against the manufacturers for breach of warranties, negligence, and strict products liability. *Id.* The case was removed to federal court and the defendants filed a motion to dismiss arguing that that the claims were barred by the economic loss doctrine. The district court thereafter certified the following question to the Tennessee Supreme Court, which our high court accepted: "Does Tennessee law recognize an exception to the economic loss doctrine under which recovery in tort is possible for damage to the defective product itself when the defect renders the product unreasonably dangerous and causes the damage by means of a sudden, calamitous event?" *Id.*

As an initial matter, the *Lincoln General* court stated that the district court's question "presupposes that Tennessee recognizes the economic loss doctrine, a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss." *Id.* The court explained, however, that while it had expressed agreement with the policies underlying the doctrine, it had never formally adopted it. *Id.* at 489 (citing *Ritter*, 912 S.W.2d at 133). The Tennessee Supreme Court therefore took the opportunity to formally adopt the economic loss doctrine in *Lincoln General*. *Id.* at 489.

In adopting the doctrine, the court first explained when it is implicated: "[t]he economic loss doctrine is implicated in products liability cases when a defective product damages itself without causing personal injury or damage to other property." *Id.* According to the court, "[i]n this context, 'economic loss' is defined generally as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'" *Id.* (citing Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages–Tort or Contract?*, 114 U. Pa. L. Rev. 539, 541 (1966)).

To determine the proper parameters of the newly adopted doctrine when only the defective product is damaged, the Tennessee Supreme Court turned to the seminal case on the doctrine, *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S.

858, 106 S. Ct. 2295, 2295, 90 L. Ed. 2d 865 (1986). In *East River*, a company that had a chartered a ship sued the two manufacturers after turbines installed in the ships malfunctioned due to design and manufacturing defects; only the turbines were damaged. *Id.* at 861. One question on appeal was whether the claim was barred by the economic loss doctrine. *Id.* at 867–71. In analyzing this question, the Supreme Court considered three approaches to the economic loss doctrine utilized by various jurisdictions, "which it described as the 'majority,' 'minority,' and 'intermediate' positions[.]" *Lincoln Gen.*, 293 S.W.3d at 489 (citing *East River*, 476 U.S. at 868–70). Ultimately, the Supreme Court adopted the majority approach and held that the shipbuilder's claim for damages related to the defective turbines was barred by the economic loss doctrine. *East River*, 476 U.S. at 870–71.

The Tennessee Supreme Court likewise considered each of the approaches outlined by the United States Supreme Court. First, the court described the majority approach adopted by the Supreme Court as "a bright-line rule that precludes recovery in tort when a product damages itself without causing personal injury or damage to other property." *Lincoln Gen.*, 293 S.W.3d at 489. The basis for this rule is that "'[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.'" *Id.* (quoting *East River*, 476 U.S. at 871). As the *Lincoln General* court explained, "the Supreme Court reasoned that damage to a defective product is merely a failure of the product to meet the purchaser's expectations, a risk that the parties had the opportunity to allocate by negotiating contract terms and acquiring insurance." *Id.* at 490 (citing *East River*, 476 U.S. at 871–72). Finally, the court noted the Supreme Court's "concern that permitting recovery in tort for purely economic loss could subject the manufacturer to an indefinite amount of damages." *Id.* at 490 (citing *East River*, 476 U.S. at 874).

On the other end of the spectrum was the "minority approach," which permits tort recovery for purely economic losses. *Id.* The jurisdictions following this view "do not distinguish between economic loss and personal injury or property damage because in either circumstance, the damage was caused by the defendant's conduct." *Id.* (citing *East River*, 476 U.S. at 869). The Supreme Court, however, rejected this approach "because it 'fails to account for the need to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages.'" *Id.* (quoting *East River*, 476 U.S. at 870–71).

Finally the Tennessee Supreme Court considered the intermediate approach, which would allow "tort recovery for damage to the defective product alone under limited exceptions that 'turn on the nature of the defect, the type of risk, and the manner in which the injury arose.'" *Id.* (quoting *East River*, 476 U.S. at 870). In particular the plaintiff in *Lincoln General* sought an exception where unreasonably dangerous products "cause damage to themselves during sudden, calamitous events." *Id.* The *Lincoln General* court

explained that the Supreme Court rejected such an exception as "'too indeterminate to enable manufacturers easily to structure their business behavior.'" *Id.* at 491 (quoting *East River*, 476 U.S. at 870). Likewise, the Supreme Court "found unpersuasive an exception that focuses on the manner in which the harm occurred":

> We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident—like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law.

*Id.* (quoting *East River*, 476 U.S. at 870).

Ultimately, the Tennessee Supreme Court likewise adopted the majority approach to claims of economic loss. As the court explained,

> We agree with the United States Supreme Court that the owner of a defective product that creates a risk of injury and was damaged during a fire, a crash, or other similar occurrence is in the same position as the owner of a defective product that malfunctions and simply does not work. It follows that the remedies available to these similarly situated product owners should derive from the parties' agreements, not from the law of torts, lest we disrupt the parties' allocation of risk. See *Prosser & Keeton on the Law of Torts* § 101(3), at 709 (5th ed. 1984) ("[R]isk of harm to the product itself due to the condition of the product would seem to be a type of risk that the parties to a purchase and sale contract should be allowed to allocate pursuant to the terms of the contract."). To hold otherwise would make it more difficult for parties to predict the consequences of their business transactions, the cost of which ultimately falls on consumers in the form of increased prices. . . .
>
> It is difficult, moreover, for parties and courts to apply a rule that focuses on the degree of risk and the manner in which the product was damaged as opposed to a rule that hinges on harm the plaintiff actually sustains. [The plaintiff] suggests, nonetheless, that adopting the bright-line rule espoused in *East River* would come at too great a price—the decreased safety of Tennessee citizens. We believe, however, that deterrence is adequately promoted by existing law that permits tort recovery for personal injury and damage to property other than the product itself. . . .
>
> In our view, the *East River* approach fairly balances the competing policy interests and clearly delineates between the law of contract and the

law of tort. We therefore hold that Tennessee law does not recognize an exception to the economic loss doctrine under which recovery in tort is possible for damage to the defective product itself when the defect renders the product unreasonably dangerous and causes damage by means of a sudden, calamitous event.

Finally, our holding is consistent with the *Restatement (Third) of Torts: Products Liability* (1998). Section 21 specifically excludes harm to "the defective product itself" from the definition of "harm to persons or property" for which economic loss is recoverable. Comment (d) to section 21 further explains:

> A plausible argument can be made that products that are dangerous, rather than merely ineffectual, should be governed by the rules governing products liability law. However, a majority of courts have concluded that the remedies provided under the Uniform Commercial Code—repair and replacement costs and, in appropriate circumstances, consequential economic loss—are sufficient. Thus, the rules of this Restatement do not apply in such situations.

*Id.* at 491–93. Thus, the Tennessee Supreme Court formally adopted the economic loss rule in its most expansive approach.

The central dispute in this case turns on which of the above cases controls this litigation. For purposes of this appeal, the parties agree that the City's claim against Hobas seeks recovery for solely economic losses caused by damage to the product itself. Appellants contend, however, that *John Martin* recognized an exception to the economic loss doctrine for claims of negligent misrepresentation that remains good law to this day. In particular, Appellants argue that *Lincoln General* did not overrule *John Martin* and, in any event, the later case's holding was limited to the exception expressly considered, i.e., for damage caused by dangerous products in sudden, calamitous events.[3]

---

[3] SSR further argues that the application of the economic loss doctrine to this negligent misrepresentation claim conflicts with the Uniform Commercial Code ("UCC"). *See* Tenn. Code Ann. § 47-1-103(b) ("Unless displaced by the particular provisions of chapters 1-9 of this title, the principles of law and equity, including . . . the law relative to . . . misrepresentation . . . supplement its provisions."). SSR does not indicate where this argument was cited to the trial court and this Court's review has not revealed that it was in fact cited in the trial court. *See* R. Tenn. Ct. App. 6 (noting that written arguments must include where errors were "called to the attention of the trial judge"). In any event, although misrepresentation may be allowed under the UCC, the economic loss doctrine is a "judicially created principle" governed by the common law. *Milan Supply Chain Sols. Inc. v. Navistar Inc.*, No. W2018-00084-COA-R3-CV, 2019 WL 3812483, at *3 (Tenn. Ct. App. Aug. 14, 2019); *see also Bermel v. BlueRadios, Inc.*, 2019 CO 31, ¶ 15, 440 P.3d 1150, 1153 (Colo. 2019); *Wadlington v. Cont'l Med. Servs., Inc.*, 728 So. 2d 352, 352 (Fla. Dist. Ct. App. 1999) ("The economic loss rule 'is a judge-made limitation on common law tort remedies,' providing that 'absent a tort independent of breach of contract, remedy for economic loss lies

In contrast, Hobas contends that the rule applied in ***John Martin*** does not apply in the context of an action involving a defective product. Instead, Hobas submits that the bright line rule adopted in ***Lincoln General*** does not allow any exceptions to the economic loss doctrine and bars the City's claim in this case because the losses suffered involved only damage to the pipes, i.e., the product themselves.

As an initial matter, we must conclude that Appellants' argument that this dispute is resolved solely by reference to the opinion in ***John Martin*** is not persuasive. Rather, the ***John Martin*** court itself made clear that the holding espoused therein did not apply in this context, emphasizing that the case was "not a products liability case[.]"***John Martin***, 819 S.W.2d at 431. Appellants contend that their case likewise is not a products liability case, but rather is a case solely involving an alleged negligent misrepresentation. Respectfully, this argument is unavailing.

It is true that without a claim for personal injury or property damage, no claim may lie under the Products Liability Act. Indeed, the Act defines a "[p]roduct liability action" as one "brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." Tenn. Code Ann. § 29-28-102(6). Of course, the statute limits this definition only "for purposes of this chapter[.]" ***Id.*** More generally, the term products liability is defined as "[a] manufacturer's or seller's liability for any damages or injuries suffered by a buyer, user, or bystander as a result of a defective product." *Black's Law Dictionary* 1328 (9th ed. 2009). Importantly, the Tennessee Supreme Court has made clear that a case can involve products liability without actually being cognizable under the Products Liability Act. As previously noted, in ***Lincoln General***, the Tennessee Supreme Court expressly held that "[t]he economic loss doctrine is implicated in products liability cases when a defective product damages itself *without causing personal injury or damage to other property*." ***Lincoln General***, 293 S.W.3d at 489 (emphasis added). If this court were to define "products liability cases" solely as those cognizable under the Products Liability Act, the ***Lincoln General*** court's adoption of the economic loss rule applicable in "products liability cases" would be entirely redundant—no such claim could exist involving the liability of a product without damage to persons or other property. As such, the Tennessee Supreme Court's language must be read to include in the definition of "products liability cases" all cases involving the liability of a manufacturer or seller for harm caused by a product, rather than the far more circumscribed definition applicable under the Products Liability Act. Pursuant to ***Lincoln General's*** definition, the claims

in contract law[.]'" (internal citations omitted)). As such, the simple fact that the UCC preserves claims for misrepresentation may be instructive, but it is not dispositive of whether the economic loss doctrine nevertheless bars the City's claim for purely economic losses in this case.

against Hobas certainly involve the liability of a seller or manufacturer of a product for damages suffered by a buyer or user as a result of a defective product. As such, we must conclude that unlike in *John Martin*, which only involved the provision of services, this case indeed involves a products liability action.

The nature of this action as involving products liability is important to the determination of whether an exception to the economic loss rule applies to the City's negligent misrepresentation claim. Although the overarching theme of the economic loss rule is that a party does not owe a duty to prevent purely economic damage, see *East River*, 476 U.S. at 871, the doctrine has evolved differently depending on the context. Indeed, many jurisdictions make distinctions between the rule as applied in the contract/services context and in the products liability context. *See **Burns v. Winnebago Indus., Inc.**,* No. 8:13-CV-1427-T-24, 2013 WL 4437246, at \*3 (M.D. Fla. Aug. 16, 2013) (noting that prior to a Florida Supreme Court case abolishing the economic loss rule as applied outside the products liability context, Florida recognized two types of economic loss rule, one applicable in "contractual privity cases" and one in "product liability cases"); *see also **Vesta Const. & Design, L.L.C. v. Lotspeich & Assocs., Inc.**,* 974 So. 2d 1176, 1179 (Fla. Dist. Ct. App. 2008) ("Because of the differing history, rationales and purposes of these separately developed doctrines, confusion often arises when one attempts to apply cases addressing the products liability economic loss rule to contractual privity cases, and vice versa."); Elizabeth Z. Brabb and Prof. James E. Wren, III, *Part III: How Has The Economic Loss Rule Developed In Texas Case Law?,* State Bar of Texas, 2017 WL 5895887 (2017) (discussing the two types of economic loss rule adopted in Texas, one in the contract arena, and one in products liability cases); *cf.* Reeder R. Fox & Patrick J. Loftus, *Riding the Choppy Waters of East River: Economic Loss Doctrine Ten Years Later*, 64 Def. Couns. J. 260, 266 (1997) (noting that "the expansion of the economic loss rule to claims involving 'services[,]' rather than goods, "has led to seemingly inconsistent results").

Tennessee likewise appears to have considered two separate rules. First, in *John Martin*, the Tennessee Supreme Court was invited to adopt a rule that prevents purely economic losses "for negligence when the plaintiff lacks privity of contract with the defendant." *Id.* at 430; *see also **Acuity v. McGhee Eng'g, Inc.**,* 297 S.W.3d 718, 734 (Tenn. Ct. App. 2008) (discussing the *John Martin* rule in the services context). Later in *Lincoln General*, the Tennessee Supreme Court did formally adopt an economic loss rule that applies "when a defective product damages itself without causing personal injury or damage to other property." 293 S.W.3d at 489. Although these rules have similar underpinnings, they are distinct. Indeed, the inapplicability of the *John Martin* rule to products liability cases is not only present in the clear language of *John Martin* noted *supra*, but also from the language of later Tennessee Supreme Court cases. First, in *Ritter*, the Tennessee Supreme Court expressly held that, based on the language of *John Martin*, "Section 552 does not apply to products liability cases[.]" *Ritter*, 912 S.W.2d at

132 (citing *John Martin,* 819 S.W.2d at 431).[4] Thus, the Tennessee Supreme Court made clear that the rule adopted in *John Martin*, allowing a claim for economic loss related to a negligent misrepresentation in the absence of contractual privity, was simply inapplicable in the products liability arena.

Next, the *Lincoln General* court, when faced with a claim of economic loss in the products liability context, did not find support for the doctrine in *John Martin* or even discuss the case. Rather, the Court stated that Tennessee had yet to formally adopt the economic loss rule and that the case presented the court "with [its] first opportunity to examine the proper application of the economic loss doctrine when only the defective product is damaged." *Lincoln General*, 293 S.W.3d at 489. Thus, the language of the *Lincoln General* opinion clearly indicates that whatever rule was adopted or espoused in *John Martin*, it had no relevance to the question of whether claims for economic losses should be barred in the products liability context.

While we find little guidance in the *John Martin* opinion to resolve the dispute at issue, we must concede that *Lincoln General* also fails to explicitly rule on the issue presented in this case. Instead, in adopting the majority approach, the only exceptions that were expressly considered and rejected by the *Lincoln General* court involved defects that render the product unreasonably dangerous and cause damage by means of a sudden calamitous event. *See Lincoln General*, 293 S.W.3d at 488 (noting the limited question certified to the supreme court by the federal court); *see also Staats v. McKinnon*, 206 S.W.3d 532, 550 (Tenn. Ct. App. 2006) (citing *Shousha v. Matthews Drivurself Serv., Inc.*, 210 Tenn. 384, 390, 358 S.W.2d 471, 473 (Tenn. 1962)) ("It is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court."). As such, Appellants raise two lines of cases in support of their theory that the negligent misrepresentation exception to the economic loss doctrine should apply to claims involving the liability of products notwithstanding the adoption of the majority approach in *Lincoln General*.[5] First, Appellants contend that

---

[4] Indeed, none of the cases cited in *John Martin* to support the rule involved manufacturers or sellers of products, despite the City's insistence otherwise. *See, e.g., Ultramares Corp. v. Touche*, 255 N.Y. 170, 173, 174 N.E. 441, 442 (N.Y. 1931) (involving a claim against public accountants); *Glanzer v. Shepard*, 233 N.Y. 236, 238, 135 N.E. 275, 275 (N.Y. 1922) (involving a claim against third party "public weighers" by the purchasers of beans, rather than against the sellers of the product); *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 384 S.E.2d 730 (S.C. 1989) (involving a suit by home buyers against the home builder); *see also John Martin*, 819 S.W.2d at 435 n.1(including a discussion of additional cases in support of its holding, none of which involve a manufacturer or seller of goods).

[5] Appellants also cite several cases citing *John Martin* as support for a negligent misrepresentation exception to the economic loss rule that are outside the products liability context. *See Cadence Bank, N.A. v. DLO Title, LLC*, No. 3:17-CV-01170, 2018 WL 1399584, at *1 (M.D. Tenn. Mar. 20, 2018) (involving a breach of contract, rather than a defective product); *City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1325 (E.D. Tenn. 2016) (same); *Acuity v. McGhee Eng'g, Inc.*, 297 S.W.3d 718 (Tenn. Ct. App. 2008) (same); *Amsouth Erectors, LLC v. Skaggs Iron Works, Inc.*, No. W2002-01944-COA-R3-CV, 2003 WL 21878540, at *1 (Tenn. Ct. App. Aug. 5, 2003) (same). These cases are therefore

- 15 -

both unreported Tennessee caselaw and federal opinions interpreting Tennessee law continued to recognize the negligent misrepresentation exception in a products liability context following *Lincoln General*. Second, Appellants assert that other jurisdictions continued to recognize the exception notwithstanding their own adoption of the majority approach to the economic loss doctrine.

We begin with the caselaw relative to Tennessee. As an initial matter, we dispense with those cases decided prior to *Lincoln General*, as the Tennessee Supreme Court had yet to adopt an economic loss rule where a defective product injures only itself. *See Valmet-Enerdry v. Alcoa Steel Fabricators, Inc.*, No. 03A01-9412-CH-00436, 1995 WL 329126, at *1 (Tenn. Ct. App. May 31, 1995) (involving defective paint but decided prior to the adoption of the economic loss rule at issue); *Metro. Gov't of Nashville & Davidson Cty. v. Affiliated Computer Servs., Inc.*, No. 3:07CV0080, 2008 WL 11393151, at *14 (M.D. Tenn. July 17, 2008) (ruling, prior to the decision in *Lincoln General*, that a claim of negligent misrepresentation against the seller of product was not barred by the economic loss doctrine because the "duty allegedly breached is therefore collateral to and distinct from [the defendant's] obligations under the Contract."). Other cases that considered this issue following the adoption of the defective product economic loss rule in *Lincoln General* do not appear to consider that opinion and therefore likewise lack significant persuasive value. *See McMahan Jets, LLC v. Roadlink Transp., Inc.*, 68 F. Supp. 3d 817, 823 (W.D. Tenn. 2014) (briefly discussing *John Martin* with regard to a choice of law issue to note that Tennessee allows a claim for economic losses for a negligent misrepresentation but not discussing *John Martin's* express statement that it was not a products liability case or the holding in *Lincoln General*). Thus, it appears that only a single federal case cited by Appellants has given at least superficial consideration to the rule adopted in *Lincoln General* and nevertheless concluded that an exception for negligent misrepresentation exists to the defective product economic loss rule. *See N5ZX Aviation, Inc. v. Bell*, No. 3-11-0674, 2011 WL 5520973, at *4 (M.D. Tenn. Nov. 14, 2011) (citing *Lincoln General* only in the context of a statute of repose argument). Still, from our review, arguments were not raised in any of the above cases specifically concerning whether the *John Martin* rule should apply in the products liability context; rather it appears that the parties and courts assumed that such was the case. In any event, none of the above cases are controlling on this Court. *See* Tenn. R. Sup. Ct. 4(G)(1) (stating that unreported cases are not controlling precedent); *Summers Hardware & Supply Co. v. Steele*, 794 S.W.2d 358, 362 (Tenn. Ct. App. 1990) (opining that "[c]ases from other jurisdictions, including federal cases, are always instructive, sometimes persuasive, but never controlling in our decisions").

Many of the cases cited from our sister jurisdictions are also not helpful. Of the three cases cited by Appellants in support of their claim that other "majority" jurisdictions have recognized an exception to the economic loss rule for negligent

---

inapposite.

misrepresentations, two did not involve any claims in the products liability context. *See Rinehart v. Morton Bldgs., Inc.*, 297 Kan. 926, 928, 305 P.3d 622, 625 (Kan. 2013) (involving misrepresentations as to the construction of a building, a claim "outside the product liability sphere"); *Lopez v. Javier Corral, D.C.,* 126 Nev. 690, 367 P.3d 745 (Nev. 2010) (involving a claim against a chiropractor and not discussing *East River*). Only one case cited by Appellants, *Progressive Northern Insurance Company of Illinois v. Ford Motor Company*, 259 F.Supp.3d 887 (S.D. Ill. 2017), appears to indicate that Illinois law may allow a negligent misrepresentation claim for economic losses in the products liability context. *Id.* at 888 (noting, in a case involving a defective product, that negligent misrepresentation is a recognized exception to the economic loss rule under Illinois law). While it is true that Illinois law permits a claim for economic losses related to a negligent misrepresentation, the Illinois Supreme Court has held that such a claim did not apply to a manufacturer of a product because the manufacturer is not in the business of supplying information for the guidance of others. *See Anderson Elec. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 154, 503 N.E.2d 246, 249 (Ill. 1986). As such, it does not appear that Illinois law lends support for the approach advanced by Appellants in this case. *See also Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 96 (D. Mass. 1998) (describing Illinois as one of the jurisdictions that has a "created narrow exception[] to the economic loss doctrine's ban against negligent misrepresentation claims for cases that do not involve an allegedly defective product").

Our own research has not revealed a persuasive majority as to either competing approach championed by the parties in this case; rather, in the few cases to explicitly decide this issue, courts have come to opposite conclusions. For example, in *State by Bronster v. U.S. Steel Corp.*, 82 Haw. 32, 43, 919 P.2d 294, 305 (1996), the Hawaii Supreme Court held that the economic loss rule did not prevent a claim for negligent misrepresentation where the damage did not arise from a defect in the product but from a claim that the defendant did not "exercise reasonable care or competence in obtaining or communicating information for the guidance of the [plaintiff] in its decision regarding the [product] to be used in the construction[.]" *Id.* at 304. In reaching this result, the Hawaii Supreme Court made clear that a duty to exercise reasonable care in providing guidance to others "is distinct from the duty eliminated by the economic loss rule[,]" which "absolves manufacturers in commercial relationships from a duty ' . . . to prevent a product from injuring itself.'" *Id.* (quoting *East River*, 476 U.S. at 871). The court also acknowledged that one purpose behind the economic loss rule is to prevent tort claims from undermining the provisions of the UCC; however, the UCC expressly permits misrepresentation claims. *Id.* at 305. Finally, the court cited other cases that had come to similar conclusions. *Id.* at 305 (citing *Vermont Plastics, Inc. v. Brine, Inc.*, 824 F. Supp. 444, 452 (D. Vt. 1993), *aff'd*, 79 F.3d 272 (2d Cir. 1996) (involving a claim against a product manufacturer but relying on Vermont law involving a service contract); *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 87 Ohio App. 3d 613, 622 N.E.2d 1093 (1993) (involving a claim against a landlord)); *see also Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (Ill. 1982) (noting a

previously recognized exception to the economic loss rule where an intentional or negligent misrepresentation has been made, but not applying the exception). *But see* discussion of Illinois law, *supra*).

In contrast, the Kentucky Supreme Court held that such a claim would be barred by the economic loss doctrine in *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729 (Ky. 2011). In that case, the purchaser provided extensive specifications for metal working equipment to be manufactured by the defendant. *Id.* at 733–34. The defendant manufactured the equipment. After a seven year express warranty expired, an incident occurred damaging the equipment, but no persons or other property. The purchaser's insurer paid for the equipment to be rebuilt at a significant cost. The insurer thereafter filed suit against the defendant for a variety of claims, including negligent misrepresentation. *Id.* at 734. Eventually, the trial court held that the negligent misrepresentation claim was barred by the economic loss doctrine. *Id.* at 735. The Kentucky Court of Appeals reversed, ruling that the economic loss doctrine did not bar the insurer's "negligent misrepresentation . . . claim[] because [it] ar[o]se in tort, independent of any contractual duty." *Id.* at 735.

Before the Kentucky Supreme Court, the defendant argued that the insurer's claim should be barred by the economic loss doctrine "because they are not distinct tort claims arising independent of the contract. Rather, both claims reference the quality or character of the [product] and are thus simply the warranty claims 'repackaged' which causes them to fall squarely within the ambit of the economic loss rule." *Id.* In contrast, the insurer claimed that the tort claims at issue "are not based solely on the product's failure to perform but are premised on classic tort theories beyond the scope of the economic loss rule" and urged the court to adopt an exception to the economic loss rule for negligent misrepresentation. *Id.*

Like the Tennessee Supreme Court in *Lincoln General*, the Kentucky Supreme Court first took the opportunity to formally adopt the *East River* economic loss rule applicable in the products liability context. *Id.* at 738. According to the court, the rule "recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 of the Uniform Commercial Code." *Id.* "Losses for injuries to people and to 'other property,'" however, remained subject to traditional theories of negligence and strict liability. *Id.* As support for the adoption of the rule, the court emphasized that it protects the boundary between tort and contract law:

> Where tort law, primarily out of a concern for safety, fixes the responsibility for a defective product directly on the parties responsible for placing the product into the stream of commerce, contract law gives the parties to a venture the freedom to allocate risk as they see fit. . . .

- 18 -

Three policies support applying the economic loss doctrine to commercial transactions: (1) it maintains the historical distinction between tort and contract law; (2) it protects parties' freedom to allocate economic risk by contract; and (3) it encourages the party best situated to assess the risk of economic loss, usually the purchaser, to assume, allocate, or insure against that risk.

*Id.* at 738–39 (quoting ***Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.***, 276 F.3d 845, 848 (6th Cir. 2002) (citing Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 13.11[1] (2000))). In adopting this rule, the court acknowledged that it was "entirely consistent with the latest Restatement of Torts which allows the buyer of a defective product to recover in tort for injuries to persons or other property but not for economic losses." *Id.* (citing *Restatement (Third) of Torts: Products Liability* §§ 1 and 21 (1998)).

The ***Giddings*** court next declined to adopt an exception to the economic loss rule for damage occurring in calamitous events. Rejecting this exception, the court explained, was "a matter of logic," as it "grounds Kentucky law in what has actually occurred as opposed to what might have occurred, the facts as opposed to speculation." *Id.* at 739. Rather, the court held that the predictability of the majority approach as adopted in ***East River*** was the proper approach for determining the parameters of the economic loss rule in Kentucky.

After deciding some other tangential issues, the Kentucky Supreme Court finally considered the issue at the center of this case: whether an exception exists to the products liability economic loss rule for negligent misrepresentations. The court first acknowledged that the tort of negligent misrepresentation had been recognized as a basis for recovery in 2004 when the Kentucky Supreme Court adopted Section 552 of the *Restatement (Second) of Torts*. *Id.* at 744 (citing ***Presnell Const. Managers, Inc. v. EH Const., LLC***, 134 S.W.3d 575, 582 (Ky. 2004)). The court, however, distinguished a traditional misrepresentation claim from that against a manufacturer:

A construction consulting firm and an attorney providing a title opinion, as well as an auctioneer, offer services which consist of information upon which others will rely. A manufacturer of a product is not in the business of supplying information but rather the product itself and, only incidentally, information about the product. The product and any information about its character, nature or performance are properly the subject of the parties' contract.

*Id.* at 745. Thus, the court recognized a distinction between misrepresentations in the services context and the products liability context. *See also id.* at 746 ("While a negligent

misrepresentation claim obviously was recognized several years later in Kentucky in ***Presnell Construction***, it was not in the context of a sale of a commercial product but in the context of construction services where the parties to the dispute had no contractual relationship.").

Ultimately, the court held that the economic loss rule bars a claim that a seller or manufacturer "misrepresented several facts regarding 'the quality, nature and appropriate uses of the product[.]'" ***Id.*** at 745 (quoting ***Miller's Bottled Gas, Inc. v. Borg-Warner Corp.***, 955 F.2d 1043, 1054 (6th Cir. 1992) (applying and anticipating Kentucky law)). Simply put,

> Although dressed in a different costume, the essence of [the plaintiff's] claim is that its losses occurred as a result of the [defendant's] defects and failure to perform as expected. "But the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." ***East River*** [], 476 U.S. [at] 868[]. Thus, the Supreme Court's reasoning in ***East River*** precluding negligence-based actions for purely economic losses, which we have expressly adopted . . . applies with equal force to the tort of negligent misrepresentation in a commercial context.

***Giddings***, 348 S.W.3d at 746 (quoting ***Miller's Bottled Gas***, 955 F.2d at 1054). Finally, the Court recognized that barring a negligent misrepresentation claim in the products liability context in the absence of injury to persons or other property was congruent with the *Restatement (Third) of Torts*, which likewise bars a tort claim in this context. ***Id.*** at 746 & n.11 (citing *Restatement (Third) of Torts: Products Liability* § 9 (discussed *infra*)). Thus, the Kentucky Supreme Court held that even where the plaintiff claims an affirmative misrepresentation as to the product, such a claim is barred by the economic loss rule. ***Id.*** at 746 ("[T]he economic loss rule applies to a negligent misrepresentation claim just as it does to negligence and strict product liability claims.").[6]

Other courts appear to have come to similar conclusions relying on a variety of rationales. *See, e.g.,* ***Duquesne Light Co. v. Westinghouse Elec. Corp.***, 66 F.3d 604, 620 (3d Cir. 1995) ("[C]ourts in jurisdictions which have adopted the economic loss doctrine routinely have declined to carve out an exception for claims of negligent misrepresentation.");[7] ***Apollo Grp., Inc. v. Avnet, Inc.***, 58 F.3d 477, 480 (9th Cir. 1995)

---

[6] Although the two parties in ***Giddings*** were in privity, courts later applying the rule adopted therein have held that because privity was not required in the ***East River*** case, the ***Giddings*** rule likewise did not require privity. *See* ***Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.***, 536 F. App'x 558, 566 (6th Cir. 2013) ("Although the parties in ***Giddings*** were in contractual privity, the reasoning of the opinion would seem to support the position that economic losses in commercial transactions cannot be recovered in tort whether there is privity or not.").

[7] Privity is required for the application of the rule under Pennsylvania law. *See* ***id.*** ("The economic loss

- 20 -

(holding that by the Arizona Supreme Court's adoption of a broad economic loss rule in the products liability context, it signaled its intention not to except negligent misrepresentations from the ambit of the rule);[8] ***Bailey Farms, Inc. v. NOR-AM Chem. Co.***, 27 F.3d 188, 191 (6th Cir. 1994) (applying Michigan law to hold that the tort of negligent misrepresentation would be barred by the economic loss doctrine in the products liability context); ***Aprigliano v. Am. Honda Motor Co.***, 979 F. Supp. 2d 1331, 1336–37 (S.D. Fla. 2013) (holding, under Florida law, that claims for negligent misrepresentation in the products liability context are barred by the economic loss rule when the allegations are that the product did not meet the customer's expectations); ***Sebago***, 18 F. Supp. 2d at 96 ("Upon review of the forgoing authorities, the court concludes that it is reasonably clear that Massachusetts would adopt some version of the second category of decisions, which create an exception to the economic loss doctrine's ban against negligent misrepresentation claims, but only for cases that do not involve an allegedly defective product."); ***Bishop Logging Co. v. John Deere Indus. Equip. Co.***, 317 S.C. 520, 530–31, 455 S.E.2d 183, 189 (S.C. Ct. App. 1995) (declining to find an exception to the economic loss rule for negligent misrepresentations in the products liability context).

After considering the foregoing authorities, we must conclude that the Kentucky Supreme Court's reasoning is more aligned with Tennessee law on this subject. As in Kentucky, the Tennessee Supreme Court has adopted the broad majority approach to the products liability economic loss doctrine espoused by the United States Supreme Court in ***East River***. The Tennessee Supreme Court characterized its adopted rule as "a bright-line rule that precludes recovery in tort when a product damages itself without causing personal injury or damage to other property." ***Lincoln General***, 293 S.W.3d at 489 (citing ***East River***, 476 U.S. at 871). An important basis for Tennessee's adoption of the majority approach economic loss rule in ***Lincoln General*** is that "damage to a defective product is merely a failure of the product to meet the purchaser's expectations, a risk that the parties had the opportunity to allocate by negotiating contract terms and acquiring insurance." ***Id.*** 489–90 (citing ***East River***, 476 U.S. at 871–72). Indeed, the Tennessee Supreme Court rejected the exceptions championed by the plaintiff in ***Lincoln General*** on the basis that a party who suffers damage due to a calamitous event "is in the same position as the owner of a defective product that malfunctions and simply does not work." ***Id.*** at 491. Thus, the court held that the remedies for either type of injury would be the same and economic losses would not be recoverable in tort under either

---

doctrine . . . only covers situations in which 'a party in privity of contract with another suffers an injury to a product itself, resulting in purely economic loss.'"). Appellants have made no argument in this appeal that the product liability economic loss rule adopted by the ***Lincoln General*** court requires privity between the parties.

[8] Other federal courts have questioned whether the ***Apollo*** holding has been applied too broadly. *See, e.g.,* ***Evans v. Singer***, 518 F. Supp. 2d 1134, 1143 (D. Ariz. 2007) (noting that while the ***Apollo*** court came to the correct result, "the language and the rationale used to get there [] has created confusion" in later cases). The ***Apollo*** decision, however, has never been overturned or expressly abrogated.

occurrence. *Id.* ("It follows that the remedies available to these similarly situated product owners should derive from the parties' agreements, not from the law of torts, lest we disrupt the parties' allocation of risk."). The Kentucky Supreme Court held that such reasoning was equally applicable with regard to a negligent misrepresentation claim, as the damage is the same in either type of action: the failure of the product to meet the consumer's expectations. *Giddings*, 348 S.W.3d at 746 (quoting *Miller's Bottled Gas*, 955 F.2d at 1054).

We agree with the Kentucky Supreme Court's conclusion. While the City was careful to couch its allegations against Hobas consistent with the language contained in Section 552 of the *Restatement (Second) of Torts*, unlike the plaintiff in *Ritter*, the allegations in the complaint clearly involve the product's failure to meet the City's expectations as to use and longevity.[9] However, a plaintiff alleging that it was injured by the negligent misrepresentations of the manufacturer as to the suitability and longevity of the product "is in the same position" as the owner of a malfunctioning product—with diminished economic expectations, i.e., purely economic losses. *Lincoln General*, 293 S.W.3d at 489. These are exactly the types of damages that the Tennessee Supreme Court has held are better adjudicated on other theories, regardless of how they are characterized in the City's complaint. *See Lincoln General*, 293 S.W.3d at 492 (quoting *First Nat. Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 931 (Tenn. 1991) ("[T]he rights and liabilities of parties to actions based on diminished economic expectations can be better adjudicated on other legal theories.")); *Ritter*, 912 S.W.2d at 133 ("Tennessee has joined those jurisdictions which hold that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence."). We therefore join other courts in concluding that "plaintiffs should not be able to circumvent the policies of the economic loss doctrine by recasting a negligence or product liability claim as a claim for negligent misrepresentation." *Sebago*, 18 F. Supp. 2d at 97; *see also Giddings*, 348 S.W.3d at 746 (coming to a similar conclusion).

Moreover, although Tennessee has long accepted Section 552 as the template for negligent misrepresentation claims, the Tennessee Supreme Court has never recognized the tort as an exception to the economic loss rule in the product liability context. Importantly, both the *John Martin* and *Ritter* courts have strongly suggested that the tort is not applicable in the product liability context. *Ritter*, 912 S.W.2d at 132 ("Section 552 does not apply to products liability cases and distinguished the causes of action."); *John*

---

[9] For example, the amended complaint contains the following allegations regarding the alleged misrepresentations:

> 79. Hobas supplied faulty information to [the City] regarding the anticipated life of its fiberglass pipe.
> 80. Hobas also supplied faulty information to [the City] regarding the stiffness of the pipe, which testing shows was below the specified stiffness, including that indicated on the pipe.

*Martin*, 819 S.W.2d at 431 (noting that the case did not involve product liability). Indeed, the *Ritter* court emphasized that "a manufacturer does not owe a duty to avoid causing purely economic damage." *Ritter*, 912 S.W.2d at 132 (quoting *Prairie Production, Inc. v. Agchem Div.-Pennwalt*, 514 N.E.2d 1299, 1304 (Ind. Ct. App. 1987)). Moreover, other courts that have adopted Section 552 have nevertheless refused to allow it to provide a basis for avoiding the application of the economic loss rule in the product liability context. *See, e.g., Axiall Corp. v. descote S.A.S.*, No. 2:15-CV-00250-LPL, 2018 WL 621287, at *18 (W.D. Pa. Jan. 30, 2018) (noting that despite the adoption of Section 552, Pennsylvania law does not recognize an exception to the economic loss rule for negligent misrepresentations by manufacturers); *Giddings*, 348 S.W.3d at 746.

Here, the Tennessee Supreme Court adopted a bright-line rule prohibiting the recovery of purely economic losses in tort for damage to defective products in an effort to increase predictability and decrease the possibility of limitless liability. *See Lincoln General*, 293 S.W.3d at 490–91 ("To hold otherwise would make it more difficult for parties to predict the consequences of their business transactions . . . ."). To allow parties to impose liability based on negligent misrepresentations in this context defeats this purpose, as illustrated by the federal district court opinion in *Metro. Gov't of Nashville & Davidson Cty. v. Affiliated Computer Servs., Inc.*, No. 3:07CV0080, 2008 WL 11393151 (M.D. Tenn. July 17, 2008). In allowing a claim for negligent misrepresentation against a manufacturer for purely economic damages to proceed, the district court placed several caveats on the viability of the action, allowing the claim only so "long as the plaintiff's claims do not sound in products liability and the alleged misrepresentations are collateral to and distinct from any duties related to the parties' contractual relationship." *Id.* at *14. Thus, without the benefit of the *Lincoln General* opinion, the federal district court adopted a rule that determined the applicability of the economic loss rule on a case-by-case basis.

In *Lincoln General*, however, the Tennessee Supreme Court rejected another exception to the economic loss rule that would except claims from the ambit of the rule on a case-by-case basis because it did not provide sufficient predictability for manufacturers. *Lincoln General*, 293 S.W.3d at 490–91. The same reasoning was used by the Kentucky Supreme Court: in adopting both the *East River* majority approach and in later rejecting a negligent misrepresentation exception, the Kentucky Supreme Court similarly opined that a "fact-intensive approach offers no predictability to contracting parties regarding the applicability of tort law and can produce varying results in seemingly similar cases, even though, in the end, the losses in those cases, . . . are exactly the same—economic losses." *Giddings*, 348 S.W.3d at 740. Thus, although Section 552 does provide specific limitations on the scope of liability, the Kentucky Supreme Court concluded that predictability was still better served with a bright-line rule disallowing economic damages in this context. Applying the same reasoning to the City's negligent misrepresentation claim, we must come to the same conclusion—that a bright-line rule

disallowing recovery of economic losses when a defective product injures only itself offers greater predictability for parties and preserves the proper separation between product liability and contract law so as to "'maintain a realistic limitation on damages.'" *Lincoln General*, 293 S.W.3d at 491. (quoting *East River*, 476 U.S. at 870–71).

Finally, a careful review of the language utilized by the Tennessee Supreme Court confirms that economic losses should not be recoverable in actions involving the liability for harm caused by products notwithstanding any allegation of negligent misrepresentation by the manufacturer. In the conclusion of *Lincoln General*, the Tennessee Supreme Court stated that Tennessee's adoption of the majority approach to the products liability economic loss doctrine was "consistent with the *Restatement (Third) of Torts: Products Liability* (1998)." *Lincoln General*, 293 S.W.3d at 493. Section 9 of the *Restatement (Third) of Torts: Product Liability* provides as follows: "One engaged in the business of selling or otherwise distributing products who, in connection with the sale of a product, makes a fraudulent, negligent, or innocent misrepresentation of material fact concerning the product is subject to liability for harm to persons or property caused by the misrepresentation." Thus, Section 9 does not provide for the recovery of economic losses for claims of negligent misrepresentations in the product liability context. *See Restatement (Third) of Torts: Prod. Liab.* § 21 (defining "harm to persons or property" as requiring harm to a person or property other than the defective product itself); *see also* **Giddings**, 348 S.W.3d at 746 (relying on Section 9 to conclude that there is no negligent misrepresentation exception to the economic loss rule in the product liability context). Consequently, in order to follow the Tennessee Supreme Court's mandate that our economic loss rule be consistent with the *Restatement (Third) of Torts: Products Liability*, we must likewise reject Appellants' assertion that Tennessee recognizes an exception to the economic loss rule in this context. Because the City seeks recovery for purely economic losses related to a defective product, we affirm the trial court's decision to dismiss the City's negligent misrepresentation claim.

## V.  CONCLUSION

The judgment of the Williamson County Chancery Court is affirmed. This appeal is remanded to the trial court for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellants the City of Franklin and Smith Seckman Reid, Inc., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE